# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-516


**STATE OF LOUISIANA**

**VERSUS**

**THERAND GUY THACKER**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 310218
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.


**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED WITH INSTRUCTIONS FOR RESENTENCING .**



**Thibodeaux, Chief Judge, concurs in part and dissents in part and assigns written reasons.**

**James C. Downs**
**District Attorney 9th Judicial District Court**
**Sheryl Lynn Laing**
**Thomas R. Wilson**
**Assistant District Attorneys**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Edward John Marquet**
**Louisiana Appellate Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Therand Guy Thacker**

**Therand Guy Thacker, pro se**
**Avoyelles Corr Ctr- Cajun 3 C1**
**1630 Prison Rd.**
**Cottonport, LA 71327**

**SAUNDERS, Judge.**

The Defendant, Therand Guy Thacker, was charged in an indictment filed on February 23, 2012, with the following eleven counts: 1) aggravated rape, a violation of La.R.S. 14:42; 2) aggravated rape, a violation of La.R.S. 14:42; 3) attempted aggravated rape, a violation of La.R.S. 14:42 and La.R.S. 14:27; 4) aggravated incest, a violation of La.R.S. 14:78.1; 5) aggravated incest, a violation of La.R.S. 14:78.1; 6) aggravated incest, a violation of La.R.S. 14:78.1; 7) aggravated incest, a violation of La.R.S. 14:78.1; 8) aggravated incest, a violation of La.R.S. 14:78.1; 9) aggravated incest, a violation of La.R.S. 14:78.1; 10) intimidating a witness, a violation of La.R.S. 14:129.1; and 11) obstruction of justice, a violation of La.R.S. 14:130.1. The Defendant was arraigned on March 2, 2012, and entered a plea of not guilty. On March 27, 2012, the State filed an amended bill of indictment.

Jury selection commenced on October 16, 2012, and, on October 18, 2012, the jury returned the following verdicts: 1) guilty of the responsive verdict of sexual battery, a violation of La.R.S. 14:43.1; 2) guilty of the responsive verdict of sexual battery; 3) guilty; 4) guilty; 5) guilty; 6) guilty; 7) guilty; 8) guilty; 9) guilty; 10) not guilty; and 11) guilty. On November 2, 2012, the Defendant was sentenced to serve twenty years at hard labor for obstruction of justice and fifty years at hard labor without benefit of probation, parole, or suspension of sentence for each count of sexual battery and one count of aggravated incest. The sentences were to be served concurrently. The trial court failed to impose sentences for the remaining five counts of aggravated incest.

A motion for appeal was filed on November 15, 2012, and was subsequently granted. In a brief filed by appellate counsel, the Defendant asserts two assignments of error. Therein, the Defendant contends the evidence presented was

insufficient to support verdicts of guilty of the sexual offenses of which he was convicted, and the trial court imposed excessive sentences. In a pro se brief, the Defendant also asserts two assignments of error. Therein, he contends the trial court refused to allow exculpatory evidence, and the indictment charged multiple counts of the same offense which constituted double jeopardy.

## FACTS:

The Defendant was convicted of sexual offenses involving his nieces, N.D. and C.D.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there is an error patent regarding the aggravated incest convictions and a potential error patent regarding the sexual battery convictions, which will be discussed within the assignment of error relating to excessiveness of the sentence for the reasons explained in the discussion of the assignment of error.

The Defendant was convicted of six counts of aggravated incest. The minutes of sentencing indicate that the trial court imposed a sentence of fifty years at hard labor without the benefit of probation, parole, or suspension of sentence on each count of aggravated incest. However, the sentencing transcript indicates the trial court imposed a single sentence of fifty years at hard labor without the benefit or probation, parole, or suspension of sentence, and it failed to specify for which conviction it was imposing the sentence. Additionally, the trial court failed to impose sentences for the other aggravated incest convictions. In *State v. Grace*, 10-1222, p. 19 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 825-26, *writ denied,* 11-961 (La. 10/21/11), 73 So.3d 382, the court explained in pertinent part:

2

In instances where the minutes and the transcript differ, the transcript must prevail. *State v. Kimbrough*, 09-1564 (La.App. 3 Cir. 6/2/10), 38 So.3d 1258. Louisiana Code of Criminal Procedure Article 879 states, "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." Where the trial court has imposed one sentence for multiple counts, this court has previously set aside the defendant's sentence on those counts as indeterminate and remanded the case to the trial court for resentencing on each count. *State v. Monceaux*, 04-449 (La.App. 3 Cir. 10/20/04), 885 So.2d 670.

Consequently, the single sentence imposed on the aggravated incest conviction is vacated and the matter remanded to the trial court for a legal sentence to be imposed on each count of the aggravated incest convictions in accordance with the applicable penalty in effect at the time of the commission of the offense. Further, we note that the trial court did not make any finding as to the Defendant's ability to pay the victims' reasonable costs of counseling pursuant to La.R.S. 14:78.1(E). *See State v. P.T.*, 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La. 5/30/08), 983 So.2d 895. As such, we instruct that it do so upon remand for resentencing.

**ASSIGNMENT OF ERROR NO. 1:**

In his first assignment of error, the Defendant contends the evidence presented was insufficient to support verdicts of guilty of the sexual offenses in counts one through nine.

The Defendant was convicted of two counts of sexual battery of C.D., one count of attempted aggravated rape of C.D., and six counts of aggravated incest. The victims of the aggravated incest charges were not set forth in the indictment.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559

(La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Furthermore, the testimony of a single witness is sufficient to support a conviction "[i]n the absence of internal contradiction or irreconcilable conflicts with physical evidence." *State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936. The trier of fact may accept or reject the testimony of any witness, and the determination of the credibility of that witness, in whole or in part, is left to its sound discretion and "will not be re-weighed on appeal." *Id.* at 936.

*State v. F.B.A.*, 07-1526, pp. 1-2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009, *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138.

N.D. was twenty years old at the time of trial. N.D.'s aunt, her mother's sister, Wtissue, was married to the Defendant. When N.D. was growing up, she occasionally spent the night with her uncle, the Defendant, and her Aunt Wtissue.

N.D. testified that, when she was five to seven years old, she spent the night "over there," and "[h]e" brought her to the shed where the washer and dryer were located, sat her on the washer, pulled down her pants, and licked her vagina with his tongue. N.D. indicated there was also a time the Defendant was working on a vehicle in his shop, and he put her in the back seat of that vehicle, pulled down her pants, and started "using his tongue on [her] again." N.D. thought she was in middle school when this incident occurred.

N.D. got pregnant when she was seventeen years old. While pregnant, she was sitting at a computer in the Defendant's home when the Defendant shoved his

hand down her pants and put his finger inside her. N.D. testified that, "[a]fter [she] was pregnant," she accompanied the Defendant to a house where he had to work on an air conditioner. While there, the Defendant took her to a bedroom and tried to stick his "wiener" inside her; however, she was able to get away. N.D. stated, "he was busy looking down, trying to unbuckle his pants, and so I was able to slip by him really fast." N.D. was eighteen at the time of this incident. N.D. remembered another incident that occurred after her son was born. At that time, she went to a storage area of the Defendant's old house with him, and he pulled down her pants and started licking her.

N.D. testified there were no witnesses to the events at issue. However, she told her mother about the abuse once when she was seven or eight years old, but no action was taken. As an adult, N.D. told her boyfriend about the abuse. N.D. subsequently reported the abuse to police. N.D. testified that her grandfather told her she needed to drop the charges against the Defendant, because the Defendant did not deserve to be in jail. N.D. also testified that her mother was pressured and told her to drop the charges. N.D. said she waited to report the abuse because she thought that since her mother did not believe her, no one else would either.

N.D. was aware the Defendant had been charged with a sexual offense before she reported her abuse to police.

Detective Steve Phillips testified that he was notified of a report regarding C.D. on December 13, 2011, and set up an appointment for C.D. to be interviewed at the Rapides Children's Advocacy Center. Detective Phillips subsequently monitored phone calls between the Defendant and his wife in which the Defendant told his wife they could get an affidavit from N.D. and C.D. in which they stated they lied about the abuse. The Defendant's wife told him not to worry, as she thought it was taken care of. Detective Phillips testified that C.D. was brought to

his office, and she informed him she wanted to drop the charges against the Defendant. When he asked why, C.D. told him the abuse did occur, but it was tearing her family apart. Detective Phillips then took a recorded statement from C.D. In that statement, C.D. repeated what she had previously told Detective Phillips.

Detective Phillips testified that C.D. never specifically indicated who was pressuring her to drop the charges. The Defendant's wife, Wtissue, brought C.D. to Detective Phillips's office a second time. Wtissue told C.D. what to put in an affidavit or what to say to police.

Detective Phillips took a statement from C.D. He testified that C.D's testimony was consistent with the statement she gave to him previously.

Ashley Honor, a forensic interviewer at the Rapides Children's Advocacy Center, interviewed C.D. At the time of the interview, C.D. was under seventeen years of age. During C.D.'s testimony, the video of her interview at the advocacy center was played to the jury. The interview was conducted on December 16, 2011. During the interview, C.D. stated that when she was six years old, she was at the Defendant's house staying the night with his daughter, Chasta, when the Defendant put his hand up her shorts and touched her private part under her panties. C.D. did not tell anyone what had occurred, as she was scared no one would believe her. She subsequently stated, "this stuff happened to me, my sister and my cousin Chasta his own daughter." C.D. said she and Chasta told Chasta's mother, who confronted the Defendant, and the Defendant said "it was just an accident." The next day, C.D. and Chasta were helping the Defendant build a cabinet in the kitchen. C.D. was wearing a skirt while sitting on the floor, and the Defendant told her to lean back and tried to stick his tongue "down there." C.D. described the event as follows: "He lifted up my skirt and he looked at my

6

underwear and he was getting closer and he heard Chasta coming so he stopped." On cross-examination, C.D. indicated she was fourteen years old when this event occurred.

C.D. said that when she was fourteen years old it was Christmas Eve, Christmas day, "or something like that," and the Defendant started rubbing all over her body. C.D. said the Defendant used his hand to rub her "boobs," "nuny cat," and "butt." C.D. indicated that when she was "maybe about 10," the Defendant made her put her hand down his pants, and she touched his "hot dog." C.D. said that on another occasion, she and Chasta were in the tub or shower with bathing suits on, and the Defendant was washing their hair. During that time, the Defendant stuck C.D.'s hand down his pants. C.D. testified she was "around ten" when this occurred.

C.D. said that on August 2, 2011, the Defendant put his hands in her shirt and touched her "boobs" under her underwear. The Defendant also stuck his hand in her gym shorts and put his finger in her "nuny cat hole." That night, the Defendant pulled his pants down and tried to put his "hot dog" in her "nuny cat." C.D. said the Defendant told her, "relax, just take it." C.D. also stated that when she was nine or ten years old, the Defendant licked the outside of her "nuny cat." C.D. testified that after the Defendant was arrested, her aunt asked other family members to talk to her about dropping the charges against the Defendant. C.D. acknowledged that during her interview at the advocacy center she stated that Chasta said things had happened to her too, and she testified that Chasta told her the Defendant molested her as well. C.D. testified that Chasta did not witness any of the abuse she suffered. C.D. denied knowing the Defendant had previously been charged with a sex offense.

7

When asked if she had been banned from the Defendant's home, C.D. indicated that a couple of months before charges were filed against the Defendant, she was involved in a fight with her grandmother and was asked not to return to the Defendant's home. She denied telling the Defendant that she would have him locked up for molesting her.

Chasta Thacker was aware that her father had a conviction for a sexual offense. Chasta indicated that C.D. and N.D. were her cousins. Chasta testified that she and C.D. did not tell her mother the Defendant molested them. Chasta additionally testified that her father had never molested her. Chasta also testified that she was seen by a physician to determine whether her hymen was intact, and "[e]verything was normal." Chasta further testified that she never witnessed anything inappropriate between the Defendant and C.D., and neither C.D. nor N.D. told her the Defendant acted inappropriately with them.

Chasta denied leaving the bathroom while the Defendant washed C.D.'s hair, and she did not recall C.D. ever being alone with the Defendant. Chasta subsequently agreed that it was possible that she left C.D. in the room with the Defendant while she went to get something.

Chasta testified that C.D. was banned from her home for pushing their grandmother down. As a result, C.D. was mad. Chasta testified that the day after C.D. was banned from her home, C.D. went to the residence and Chasta's brother told her to leave. As a result, C.D. stated, "'F' all of y'all, y'all can all burn down there." Chasta indicated the Defendant was arrested a week after the fight. Chasta never heard her mother threaten C.D. with respect to dropping the charges against the Defendant.

Donald Dyer, the Defendant's brother-in-law, testified that he did not witness the Defendant molest anyone, and he did not believe the allegations made

8

by C.D. and N.D. were true. Dyer testified that he did not witness the fight C.D. supposedly had with her grandmother; however, he, the grandmother, and C.D.'s mother and father discussed the matter with C.D. Dyer testified that C.D. did not like what the group said to her, so she threatened to press charges against the Defendant for sexual molestation. Dyer testified that C.D.'s claim that the Defendant molested Chasta was a lie, as Chasta loved her father.

Dyer testified that the wrong person was in jail. He based his conclusion on "the drugs or the sneaking out of the house to her [C.D.'s] boyfriend's house all hours of the night." Dyer testified that C.D. threatened to have him arrested because he was going to "whip her butt" for hitting his mother.

Dyer was aware the Defendant had pled guilty to carnal knowledge involving a babysitter who was thirteen or fourteen years old.

Betty Dean Gaspard, the Defendant's neighbor, testified that she grew up with C.D. and Chasta. Betty testified that Chasta never indicated her father was molesting her. Betty was aware the Defendant was a sex offender, and her parents would not let her go to his residence. Betty testified that she did not feel uncomfortable or threatened when she was around the Defendant. Additionally, C.D. never told her the Defendant did anything inappropriate to her.

Betty was asked if she stated the following during an interview at the advocacy center: "I don't like it when she . . . leaves me in there by myself – by myself with him casue [sic] people have told me that he's done stuff in the past and it makes me feel weird around him." Betty responded, "that's like around any man. Like, I just – I don't really like being alone with men." Betty then admitted she made the statement during the interview. Betty indicated that neither C.D. nor N.D. had ever said anything about the Defendant to her. Betty did not remember telling the interviewer that N.D. said she felt weird around the Defendant because

9

of the things that N.D. had heard, that C.D. said the Defendant was always doing "stuff with her," or C.D. saying the Defendant tried to touch her "boobs and stuff."

The Defendant testified that he was forty-four years old. The Defendant also testified that he had sex with his children's thirteen-year-old babysitter and pled guilty to carnal knowledge of a juvenile.[1] He spent six months in jail, was on supervised probation for five years, and had to register as a sex offender for fifteen years. The Defendant denied the allegations made by his nieces, C.D. and N.D. The Defendant agreed that he told the truth regarding the prior allegations once the detective told him there was a witness to his inappropriate acts.

The Defendant testified that he did not approve of the way C.D. conducted herself at times and of the language she used, so he did not want her around his children. The Defendant indicated that C.D. and N.D. knew he was a sex offender.

The Defendant testified that when he found out who the victims of the current offenses were, he asked his wife to ask them "why they did it and to drop this nonsense." The Defendant was surprised that N.D. accused him of such behavior, as she seemed pleased with the things he and his wife had done for her.

In brief to this court, the Defendant contends "[t]he most obvious and glaring aspect of the prosecution's case is the utter absence of any physical or forensic evidence" to support N.D.'s allegations. The Defendant asserts that N.D. stated there were several incidents, but she did not remember them. The Defendant asserts that if we were to believe N.D.'s allegation that she was sexually abused as early as six years old and the abuse continued for many years, "isn't the absence of any forensic/medical evidence irreconcilable with the testimony?" The Defendant notes that no one observed the Defendant abuse N.D., and she never told anyone about the abuse because no one would believe her.

---

[1]A joint stipulation indicated the Defendant pled guilty to this offense on October 7, 2002.

The Defendant contends that C.D.'s testimony is fraught with the same internal contradictions and inconsistencies as that of N.D. The Defendant notes that C.D. testified she told Chasta of the sexual abuse, and Chasta said she had been abused; however, Chasta denied C.D.'s claims. The Defendant notes that no one saw the Defendant abuse C.D. Additionally, C.D. told Detective Phillips she wanted to drop the charges. The Defendant contends that C.D. had a motive to lie, as she had been banned from his residence shortly before the allegations were reported to police.

The Defendant argues that it is internally inconsistent that a person subjected to repeated sexual assault would return time after time to the residence of her attacker. The Defendant contends that the testimony of N.D. and C.D. is irreconcilable with the physical evidence, is internally inconsistent, and should be rejected.

N.D. testified the Defendant licked her vagina, inserted his finger into her vagina, and tried to penetrate her while she was pregnant. It is clear that physical evidence of several of the claims made by N.D. would not be available because the offenses occurred many years prior to N.D. reporting them to police. Additionally, N.D. was clearly sexually active when the last offense occurred, as she was pregnant at that time. The only act committed against C.D. which might have left physical evidence at the time the offenses were reported to police was the Defendant's attempt to penetrate her on August 2, 2011. "However, Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence." *State v. Ware*, 11-337, p. 4 (La.App. 3 Cir. 11/23/11), 80 So.3d 593, 597, *writ denied*, 11-1391 (La. 3/9/12), 84 So.3d 549, *and writ denied*, 12-46 (La. 8/22/12), 97 So.3d 358. Furthermore, the testimonies of C.D. and N.D. may have

11

conflicted with that of Chasta and the Defendant; however, there was no internal contradiction in the testimony of N.D., and the only contradiction in C.D.'s testimony dealt with the age she was when the Defendant raised her skirt in his kitchen.

The jury's verdicts indicate it chose to believe the testimonies of N.D. and C.D. over that of the Defendant and his daughter, Chasta. This court will not second-guess those credibility determinations. Accordingly, we find that the claims raised by the Defendant in his first assignment of error lack merit.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, the Defendant contends the trial court imposed an excessive sentence tantamount to a life sentence.

Defense counsel failed to object to the sentences imposed or file a motion to reconsider those sentences. Thus, this court normally would have the option of finding the claim of excessiveness of sentence was barred by the Defendant's failure to object to the sentence imposed at the sentencing hearing and failure to file a motion to reconsider sentence; however, here, the error patent involves the legality of the sentences for sexual battery.

Additionally, this court has reviewed claims of excessiveness where no objection was made and no motion to reconsider sentence filed. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, __ U.S. __, 131 S.Ct. 932 (2011); *State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127. Accordingly, we will review the Defendant's claims as a bare claim of excessiveness.

The Defendant's sentences for the aggravated incest convictions were vacated due to errors patent. Those remaining are his fifty-year sentence for attempted aggravated rape, his fifty-year hard labor sentences for two counts of

sexual battery, and his twenty-year hard labor sentence for obstruction of justice. The trial court ordered the sentences to be served concurrently.

The law is well settled concerning the standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99–192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00–0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95–2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

Even when a sentence falls within the statutory sentencing range, it still may be unconstitutionally excessive. In determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that several factors may be considered:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Prior to imposition of the Defendant's sentences, the trial court questioned the Defendant, who indicated he was forty-four years old; his date of birth was February 12, 1968; he had graduated from high school; he had worked in construction and as a truck driver; he had been unemployed for a couple of years; he was married; he had four children, ages eighteen, seventeen, fifteen, and five; he had not been in the military; and he did not have a substance abuse problem.

The State informed the trial court the Defendant had a prior conviction for carnal knowledge of a juvenile. The trial court then stated:

> [Under Louisiana Code of Criminal Procedure Article] 894.1, the aggravating factors are -- well, I'll say under paragraph [A], if it's an undue risk during the period of a suspended sentence or on probation that he will commit a crime, I believe that he's in need probational treatment or a custodial environment that can be provided most effectively by his commitment to an institution, and I believe that a lesser sentence would deprecate the seriousness of his crime.
>
> I believe that B(2) is an aggravating factor in that the victim was particularly vulnerable and incapable because of extreme youth. I believe that he used his position of status to facilitate the commission of the offense. That's number 4.
>
> . . . .
>
> . . . The mitigating factors, well that would be -- just reverse those.
>
> I find that his conduct caused a serious harm to these children. We know most females that are sexually abused, most of them have substance abuse problems; most of them have problems with relationships with men; most of them have multiple divorces, is what -- that's a few of the causes of sex abuse amongst females.
>
> I find that his conduct caused serious harm and that he contemplated that. He did not act under strong provocation. There were not grounds to excuse or justify his criminal conduct. I do not believe that the victims induced or facilitated his commission. I do not have any information that he could compensate the victims for his criminal conduct. He does have a history of prior criminal activity,

which was carnal knowledge of a juvenile over a long period of time involving a babysitter.

I find that his conduct is the result of circumstances that will likely recur if he does not receive this sentence. I do not find that he would respond affirmatively to probation treatment because he was on probation before and he did not respond to that.

The trial court then found that the dependence of the Defendant's children on him as a father was a mitigating factor and continued:

I find another factor for the Court to consider is that he's not admitted his blame or expressed any remorse. He was not under a serious emotional strain at the time of the events.

Okay, the factors that I consider are rehabilitation. I do not find that the defendant is subject to rehabilitation. This is an ongoing problem with him and I do not know if he could respond to that.

I need to consider general deterrence, and I believe that the community needs to know that this type of activity is serious. It is to be considered by the -- serious by the District Attorney's Office because they prosecuted him for eleven (11) counts and the sentence needs to reflect that the Court considers it serious so that it will create general deterrence in the community. . . . In punishment, I need to give him some type of sentence to specifically deter him from future - - from future criminal conduct such as this.

Attempted aggravated rape is punishable by a term of imprisonment of ten to fifty years at hard labor, and the Defendant was sentenced to the maximum term of incarceration. *See* La.R.S. 14:42; La.R.S. 14:27.

This court is to consider the nature of the offense when addressing a claim of excessive sentence. *Smith*, 846 So.2d 786. Although the Defendant was convicted of attempted aggravated rape, it is unclear from the record which of the Defendant's acts against C.D. was the basis for this offense. The indictment states the offense of attempted aggravated rape occurred between January 1, 1997, and December 31, 1999. C.D. testified that her date of birth was June 26, 1996; thus, C.D. would have been between the ages of six months and three years old during the time period listed in the indictment. C.D.'s testimony indicates she was six

15

years old when the abuse at issue herein began. C.D. stated during her interview at the advocacy center that when she was six years old she was assisting the Defendant with a project in his kitchen and he told her to lean back and tried to stick his tongue "down there." However, on cross-examination, she indicated this event occurred when she was fourteen, as this was how old she was when she helped the Defendant in his kitchen. If C.D. was six years old at the time of the offense, the offense would have occurred between June 26, 2002, and June 25, 2003, and if she were fourteen years old at the time of the offense, the offense would have occurred between June 26, 2010, and June 25, 2011. If C.D. was fourteen years old, the evidence would not support a verdict of attempted aggravated rape based on C.D. being under the age of twelve. This concern was not raised by the Defendant in his briefs to this court.

The trial court did consider the circumstances of the Defendant at the time the sentence was imposed and discussed several aggravating and mitigating factors that were present. This court can find few cases where a defendant was convicted of attempted aggravated rape of a child and did not have sexual intercourse with that child. However, this court did find several cases in which adults were the victims of attempted aggravated rape.

In State v. Fuller, 514 So.2d 657 (La.App. 2 Cir. 1987), the defendant attempted to force his way into a lady's home after she refused to let him enter. A struggle ensued, and the lady's daughter retrieved a gun. The defendant then left the home. The lady drove down the street to make sure the defendant had left the area and saw his vehicle at the mobile home of a neighbor, and the door of the mobile home was wide open. The lady blew her horn for several minutes, and the defendant subsequently ran out the door of the mobile home. The victim who lived inside the mobile home testified that the defendant forced his way into her home.

While attempting to enter the mobile home, the defendant tried to unzip his pants. The victim then got a butcher knife from the kitchen and pled with the defendant not to hurt her baby. The defendant threw the victim against the sink and squeezed her wrists until she dropped the knife. Next, the defendant pinned the victim against the kitchen table, and the struggle continued against the cabinets, on the kitchen floor, against the chairs, and onto the living room floor. The victim indicated the defendant attempted to unzip his pants during the entire struggle. The victim broke free but would not leave her baby. The defendant then struggled with the victim until she hit the floor. The defendant then wrapped his legs around her and attempted to get into her shorts while saying "'you know you want me.'" Id. at 659. The victim then heard a horn. The victim told the defendant her husband was home, and he fled. The second circuit found the defendant's sentence of fifty years for attempted aggravated rape was not excessive.

The Defendant herein has a prior conviction for felony carnal knowledge of a juvenile. As such, we find that the Defendant's sentence of fifty years at hard labor is supported by the fact that a fifty-year-sentence was imposed in Fuller, 514 So.2d 657.

In the present case, initially during the sentencing proceeding, the trial court stated the sentencing range for sexual battery was up to ten years. The prosecutor then stated, "There's some different ranges on that depending on the age of the victim and also the effective date. The effective date of the amendments, I believe was 2006, making it twenty-five to ninety-nine."[2] Thereafter, the trial court stated, "All right, so sexual battery is twenty-five to ninety-nine. . . ." On each of the sexual battery convictions, the trial court sentenced the Defendant to fifty years at

---

[2]The 2006 amendment added the range of twenty-five years to life when the victim was under the age of thirteen. In 2008, life was changed to ninety-nine years.

17

hard labor without the benefit of probation, parole, or suspension of sentence. In *State v. Sugasti,* 01-3407, p. 4 (La. 6/21/02), 820 So.2d 518, 520, the court held in pertinent part:

> This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. *State v. Wright*, 384 So.2d 399, 401 (La.1980). A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense. *State v. Narcisse*, 426 So.2d 118, 130-131 (La.1983).

According to the charging instrument, the Defendant committed sexual battery (count one) between January 2003 and December 2005 and sexual battery (count two) between January 1999 and December 2002. C.D. was listed as the victim of the two counts of sexual battery.

One of the incidents that C.D. testified to that fits the definition of sexual battery occurred when she was six years old. C.D. testified her date of birth was June 26, 1996. Given C.D.'s date of birth, that incident would have occurred sometime between June 2002 and June 2003. If this incident is used for one of the sexual battery convictions, the sentencing range in effect at that time was not more than ten years with or without hard labor and without the benefit of parole, probation, or suspension of sentence. The other incident that C.D. testified to that falls within the date ranges listed in the charging instrument for the sexual battery counts and fits the definition of sexual battery is the only conduct which supports the attempted aggravated rape conviction, as discussed previously.

There are several other incidents that C.D. testified to that fit the definition of sexual battery; however, two of the incidents, as discussed in the following paragraph, may have occurred outside the date ranges specified in the charging instrument for the sexual battery counts, and several of the incidents definitely

18

occurred outside the date ranges specified in the charging instrument for the sexual battery counts.

As noted in the sufficiency review, C.D. testified that when she was "maybe about 10," the Defendant put her hand down his pants, and with respect to a separate incident, she testified when she was "around ten," the Defendant put her hand down his pants. C.D. turned ten on June 26, 2006. The effective date of the 2006 amendment to La.R.S. 14:31.1, which added the penalty range of twenty-five to life when the victim is under the age of thirteen, was August 15, 2006, approximately a month and a half after C.D. turned ten. C.D.'s testimony that she was "maybe about 10" for one incident and "around 10" for the other incident does not pinpoint the time of the offenses and could mean the incidents occurred sometime before or after her tenth birthday. Therefore, it is unclear whether the two incidents just discussed occurred prior to or after the 2006 amendment to La.R.S. 14:43.1. Since it cannot be determined whether the incidents occurred before or after the 2006 amendment to La.R.S. 14:43.1, the legality and excessiveness of the sentence on one of the counts of sexual battery cannot be determined if one of the above-referenced incidents was the basis of one of the sexual battery convictions. There were three other incidents C.D. testified to that fit the definition of sexual battery, and based on her testimony regarding her age at the time of the incidents, the incidents clearly occurred after the effective date of the 2006 amendment to La.R.S. 14:43.1. Therefore, if any one of these three other incidents was the basis for one of the sexual battery convictions, the 2006 amendment to La.R.S. 14:43.1 would apply to that conviction.

Louisiana Code of Criminal Procedure Article 872 provides, "A valid sentence must rest upon a valid and sufficient . . . [v]erdict, judgment, or plea of guilty."

19

In *State ex rel. Simpkins v. State*, 12-1599 (La. 12/14/12), 102 So.3d 776, the trial court sentenced the relator to ten years for a molestation conviction.

> In reviewing the sufficiency of the evidence on direct appeal, the court of appeal determined, sua sponte, that relator's 10-year sentence for molestation was illegally lenient under R.S. 14:81.2, as amended in 2006 to increase the penalty for a person who commits the crime of molestation of a juvenile when the victim is under the age of 13 years from one to 10 years imprisonment to 25 years to life imprisonment at hard labor. Specifically, the court of appeal made a factual determination that relator must have molested the victim during a five-month window between the effective date of the amendment and the victim's 13[th] birthday.

*Id.* at 776.

The supreme court further stated,

> the state concedes that relator is correct his sentence is illegal because the penalty, far in excess of the maximum 10-year sentence he initially received under the law as it read before the 2006 amendment, "is based on facts not found by the jury at trial, but assumed by the court of appeal when it order [sic] him resentenced."

*Id.* at 777.

The supreme court vacated relator's life sentence for molestation of a juvenile under the age of thirteen and reinstated the original sentence of ten years. In view of *Simpkins*, it would be improper for this court to assume which conduct supports which convictions or to assume the dates the offenses were committed when the victim's testimony did not pinpoint the commission dates.

Summarizing, because the record does not establish which conduct supports which conviction and because the legality and excessiveness of at least one of the two sexual battery convictions cannot be determined, we vacate the two sexual battery sentences and remand the matter to the trial court for resentencing, in accordance with the applicable penalty in effect at the time of the commission of the offense, at which the trial court should clarify the reasons for sentencing regarding both of the sentences on the sexual battery convictions.

The Defendant was also convicted of obstruction of justice. We do not speak to whether there was enough evidence under La.R.S. 14:130.1(A)(2) to convict the Defendant, as this issue was not raised.

The State asserted in the indictment that the Defendant committed the offense by tampering with evidence. However, at trial, the State argued the Defendant obstructed justice by having his wife try to have C.D. drop the charges against him. The Defendant was charged with two counts of aggravated rape of C.D. and one count of attempted aggravated rape of C.D. The sentencing range for obstruction of justice depends upon the penalty for the criminal proceeding the Defendant attempted to affect. Louisiana Revised Statutes 14:130.1 sets forth the following:

> B. Whoever commits the crime of obstruction of justice shall be subject to the following penalties:
>
> (1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.
>
> (2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both.
>
> (3) When the obstruction of justice involves any other criminal proceeding, the offender shall be fined not more than ten thousand dollars, imprisoned for not more than five years, with or without hard labor, or both.

If the conviction was based on the charges of aggravated rape, the applicable sentencing range would be zero to forty years, and if the conviction was based on the charge of attempted aggravated rape, the applicable sentencing range would be zero to twenty years. The applicable sentencing range plays a very important role in the court's determination of whether the Defendant's sentence is excessive. If

21

the applicable sentencing range is zero to twenty years, the Defendant received the maximum sentence. However, if the applicable sentencing range is zero to forty years, the Defendant received a mid-range sentence.

*Simpkins*, 102 So.3d 776, is distinguishable from the case at bar, as the appellate court made a factual determination in *Simpkins* when imposing the sentence. This court cannot assume the applicable sentencing range for obstruction of justice; therefore, the Defendant's sentence for obstruction of justice is vacated and the matter remanded to the trial court for resentencing, at which the trial court should be instructed to specify which subparagraph of La.R.S. 14:130.1 the Defendant is being sentenced under and the reasons for sentencing under said paragraph.

**PRO SE ASSIGNMENT OF ERROR NO. 1:**

In his first pro se assignment of error, the Defendant contends the trial court clearly violated his fundamental right to due process of law by refusing exculpatory evidence which would clearly undermine the verdict and would tend to show the victim lied under oath.

The Defendant contends the trial court abused its discretion when it "refused to allow defense counsel's witness to testify, and who's [sic] testimony attest's [sic] that prior to the alleged offense, several reliable persons heard the alleged victim make a threat that she would falsely accuse the defendant of sexual misconduct with her." The Defendant fails to reference a ruling by the trial court denying any witness the right to testify, to set forth the name of the witness to which he is referring, or to reference by volume and page the place in the record that contains the basis for his claim. For these reasons, we will not consider the Defendant's assignment of error. *See State v. Lewis*, 09-846 (La.App. 3 Cir.

22

4/7/10), 33 So.3d 1046, *writ denied*, 10-967 (La. 11/24/10), 50 So.3d 825; Uniform Rules—Courts of Appeal, Rule 2-12.4.

## PRO SE ASSIGNMENT OF ERROR NO. 2:

In his second pro se assignment of error, the Defendant contends it is "plain error on the patent of the face of the record" where the charging instrument charges multiple counts of the same distinct offense which clearly violates his rights against cumulative and successive punishments under the Fifth Amendment of the United States Constitution and Article 1, § 15 of the Louisiana Constitution of 1974.

The Defendant asserts the following:

> A provision in a penal statute that any person "who violatyes [sic] or fails to comply with any of" it's [sic] requirements shall be punished as there specified is not construable as imposing a single punishment for the violation by a single act, of separate requirements, and the penal section of these statutes does not authorize, cumulative and successive punishments. Wherefore the trial court violated Petitioner's constitutional right's [sic], and statutory right's [sic] against Double Jeopardy.

"The constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction, and prevent multiple punishments for the same offense." *State v. Grace*, 10-1222, p. 14 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 823, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382. The Defendant fails to set forth which of his convictions are for the same offense or for which offense he received multiple punishments. For these reasons, we find that this assignment of error lacks merit.

## DECREE:

The Defendant's convictions are affirmed. However, the fifty-year sentences imposed on the sexual battery convictions are vacated and the matter remanded to the trial court for resentencing in accordance with this opinion.

Additionally, the single sentence imposed on the aggravated incest conviction is vacated and the matter remanded to the trial court for a legal sentence to be imposed on each count of the aggravated incest convictions in accordance with this opinion. Further, we note that the trial court did not make any finding as to the Defendant's ability to pay the victims' reasonable costs of counseling pursuant to La.R.S. 14:78.1(E). See State v. P.T., 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, writ denied, 08-26 (La. 5/30/08), 983 So.2d 895. As such, we instruct that it do so upon remand for resentencing. Furthermore, the Defendant's sentences for attempted aggravated rape and obstruction of justice are vacated and the matter remanded for resentencing in accordance with this opinion.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED WITH INSTRUCTIONS FOR RESENTENCING.**

**STATE OF LOUISIANA**

**VERSUS**

**THERAND GUY THACKER**

**THIBODEAUX,  Chief Judge, concurring in part and dissenting in part.**

I concur with the majority's decision to remand, but disagree with the majority's decision to affirm the obstruction of justice conviction.

Louisiana Revised Statutes 14:130.1(A)(2) requires the use or threats of force, and there was no evidence that the defendant used or threatened force against C.D. or had someone do so on his behalf.  I would reverse the obstruction of justice conviction on the basis of insufficiency of the evidence.

For the foregoing reasons, I concur in part and dissent in part.